*504
 
 Ruffin, C. J.
 

 The defendants were arrested upon a satisfaciendum, at the suit of the plaintiff, and gave bond
 
 for
 
 their appearance, to take, the benefit of the act ^ relief of insolvent debtors. Each of the defendants filed a schedule, and gave the proper notice of his intention to avail himself of the benefit of the act; and moved the court to swear to his schedule and be discharged. On the 13th day of October, 1840, D. Alexander conveyed to a trustee lands and slaves, and a number of other chattels, in trust, to sell after the first day of January, 1842, and out of the proceeds pay certain debts in the deed enumerated; and in the event of the said debts being paid, without a sale of the property, or that any part should remain unsold, after pay-i'ng the debts, then in trust to re-convey to the said D. Alexander. On the 25tb of March, 1841, the other party,. W. F. Alexander, made a similar deed, whereby he conveyed lands and assigned his debts to a trustee upon the like trusts-Each of the defendants annexed to his schedule a copy of the deed of trust by him made; and, in the schedule, each assigned “ all the interest resulting to him in the property, or proceeds of sale thereof, conveyed by the deed of trust, of which the copy is filed herewith, after satisfying the debts secured thereby.” The plaintiff opposed the motion of the defendants, and suggested that they ought not to be discharged, because the defendants had respectively set forth, in their schedules,, property, money and effects of value more than sufficient to pay all the debts they justly owed, including that to the plaintiff. And the plaintiff prayed the court to direct an issue to be made up thereon and tried by a jury. But the court refused the motion of the plaintiff, because, admitting the suggestion to- be true,- it furnished no reason, why the debtors should not schedule or assign their property in this proceeding and take the oath, and be discharged.
 

 The plaintiff also suggested fraud and concealment of property and effects by the defendants; and, particularly, that the deeds of trust, made by the defendants respectively and referred to in their schedules, were made with the intent to defraud and delay the plaintiff and other creditors of the recovery of their debts and to re’serve and secure a benefit to them
 
 *505
 
 ->selves. And the plaintiff prayed the court to direct issues aceordingiy to be made up as to each of the said deeds, and tried by a jury. But the court was of opinion, that it was not material, whether either of the deeds was fraudulent or not; and, supposing it to be so, that it furnished no good reason, why the defendans might not be permitted to file schedules, setting out therein the trusts resulting to them, and take the oath; and therefore the court refused this prayer of the plaintiff also.
 

 The court then directed an issue in the following form: Hath the defendants or either of them concealed any property, money or effects, belonging to them or either of them, or held by any person in trust for them or him, and omitted to set forth the same in the respective schedules, by the defendants filed? And do or do not the said schedules respectively set forth and make a full disclosure and discovery of all the property, money and effects belonging to the defendants respectively, or held by any person in trust for them or either of them? Upon that issue, the jury found in favor of the defendants; and the plaintiff, being dissatisfied with the opinions of the court before mentioned, appealed.
 

 Upon the first point made at the trial, this court entertains the same opinion his Honor gave. It is said, on the contrary, that the terms of the oath, and all the provisions of the act, taken together, show, that only the case of a debtor, who is insolvent, was in the contemplation of the legislature; and therefore a person, who is able to pay his debts and puts into his schedule more property than will pay all of them, is not within the act. It is very clear, that no other case was thought of, but that of insolvency; because it was not expected, that any person, fully able to pay all his debts
 
 would
 
 apply to take the benefit of the act. But there is nothing to prevent one in that situation doing so, should he happen to be under the necessity of making the application, as the means of being enlarged from imprisonment. The oath is, that the schedule is true, and that the debtor has not “any
 
 other
 
 estate” of the value of the debt. The object of the law is to enforce the surrender of all the debtor’s property, so that the debt may be paid altogether, or as far as the prop
 
 *506
 
 erty will go. When the surrender of
 
 all
 
 is made, whether that be little or much, the debtor is to be enlarged. And it certainly never can be imputed as a crime tothedebtorj for which he is to be continued in prison, that he has surrendered too much property; more than will pay all his debts. It will not indeed often occur, but a case may easily be conceived, where a stranger, whose property was in a distant country and unknown here, might find the surrender of it the only means of escaping the jail, because
 
 he
 
 could not immediately find a purchaser. It is not uncommon where the system of bankurptcy is established, that although the debtorcould notimmediately commandhismoney, andso was properly declared bankrupt, for not punctuallypayinghisdebts,yet his estate, when got in by the assignees, pays
 
 twenty shillings
 
 in the pound and leaves a surplus tor the bankrupt himself. The proceedings under our act upon scheduled property are of the nature of an assignment in bankruptcy; and the same principles are applicable to both in the point now under consideration.
 

 Upon the next question, the opinion of this court differs from that of his Honor. The fourth section of the act for the relie! of insolvent debtors, Rev. St. ch. 58, requires the debtor “to set forth an exact account of his estate and all other circumstances relating thereto;” andby the 11th section all the estate, effects and debts, contained in the schedule, are vested in the sheriff, who is to sell the estate and collect the monies and pay the whole into court, to be distributed among all the creditors, as mentioned in the next section. It is to be remembered also, that the 10th section, which gives the issue to the creditor, enacts, that, if the jury finds any fraud or concealment of effects, the debtor shall be adjudged tobe imprisoned, until he make a full and fair disclosure, by filing a new schedule; and, then, by giving a new notice, he may at the next court take the oath and be let out of prison. This last provision was introduced by the act of 1830; that of 1822 having left it uncertain, how long • a person, found guilty of a fraud, might be kept in jail, or whether he could be discharged at all as an insolvent. The provision as now existing shews a just reprobation and denounces a
 
 *507
 
 •reasonable penalty on dishonest practices in debtors. They
 
 are
 
 not entirely deprived oí the privilege of being discharged, by taking the oath of insolvency; but they-are only admitted to that privilege, at the end of an imprisonment from one term of the court to the other, and then upon filing a true and unimpoached schedule. In the present case, therefore, the plaintiff had aright to impeach the schedule, for the two-fold purpose of praying his debtors, if found guilty of fraud and of not giving the exact account of their estates required by the act, into the custody of the sheriff — there to remain until the next court, as a just punishment for their covin; and also of having all the estate, which ought legally to be applied to the satisfaction of the plain tiff and the other creditors, vested in the sheriff for that purpose. Now, this can only be effected by having a new schedule and including therein, the property omitted in the first, or fraudulently conveyed or concealed. For the statute does not merely, upon the finding of the fraud, vest in the sheriff the property in respect to which the fraud has been found; but it vests in the sheriff “all the -lands contained in the schedule, and all the goods and chattels and debts and demands set forth and described in the -schedule.” Hence, only those interests, particularly scheduled, vest in the sheriff, or enure to the benefit of the creditors. And hence, also, the necessity of a new schedule alter fraud found, and a new issue on it. Then it remains to be considered, what interests or estates ought to be scheduled? Upon that point the court is of opinion, both from the reason of the thing, and from the particular provisions of the statute, that the schedule ought to disclose every interest, which would have been liable to the creditor on
 
 fi. fa.,
 
 or ought . in,law or equity to be subject to the creditor’s demand. If, therefore, the debtor has made a deed of trust in fraud of some of his creditors, it is not sufficient that the schedule • should contain
 
 the resulting trust
 
 of the maker of the deed. If the deed is fraudulent, it is void as against the creditor, and he is not confined to the resulting trust, but may take the property, the
 
 corpus
 
 itself. Here, the debtors have scheduled only the resulting trust, which affirms the other trusts to be
 
 bona fide
 
 and good, and is an assignment of the surplus
 
 *508
 
 only after all the other purposes of the deed have been answerec^ And that was right, supposing the deeds of trust to be
 
 bona fide
 
 and valid conveyances. But they may not be, and the tenders an issue that they are not; and if they be not, then the schedule ought to set forth
 
 the property itself,
 
 as being in the debtor, notwithstanding the deed made by him. The property, it is true, is not in him, as between himself and his alienee; but it is in him for the purposes ofhis creditor, and therefore ought to be inserted in the schedule, that the sheriff, as his assignee by operation of law, may bring an action against the debtor’s alienee to try the validity of the deed. This will be the clearer, if we suppose that instead of a deed of trust, this were an absolute deed, and found by the jury, on an issue, to be fraudulent. In that case, the Statute says, the party shall make a new schedule, and be irriprisoned, until he shall make it. Why is it to be made ? Unquestionably, for the purpose of including in it, among other things, the property fraudulently conveyed, and omitted in the former schedule; so that, under the new assignment, the sheriff may'assert a right to that property for the benefit of the creditors. Under the schedule, as it is, the sheriff can only claim to be assignee of the resulting trust. Whereas, if the deed be fraudulent, the whole property, as conveyed by the deeds, ought to be taken away from the trustees, and vested in the sheriff. If this were not so, a voluntary and fraudulent conveyance would be affirmed as against creditors, merely upon the ground, that the fraudulent donor was bound by his-deed, and took the oath of insolvency, without including that property in his schedule; which, we think, can not be. It is analogous to the common case in England of an assignee in bankruptcy recovering property, which the debtor, in qpntemplation of bankruptcy, passed to a favoured creditor in fraud of the rights of the other creditors under the bankrupt law. The conveyance being in fraud of the law, which provides for an equal distribution of the bankrupt’s estate, it is held to be void; and, although the debtor could not recover the property conveyed by him, his assignees may. The same law must be here, and for the like reason. Therefore, assuming the deeds to be fraudulent, as his Honor did, the
 
 *509
 
 defendants could not be discharged, upon an assignment of their resulting trusts, hut should have been required to assign the estates conveyed in the deeds; and, to ascertain the true character of those conveyances, the plaintiff had a right to have an issue tried, as tendered by him;
 

 It is true, perhaps, the jury might have found all that was necessary for the plaintiff upon the issue, as framed by the court. But it must be supposed, the court gave to the jury by way of instructions the same opinion, which was delivered on the pi ailitiff’s, motion fdrxa special issue on the deeds, and, therefore, that the same error pervaded the ■ trial throughout. Under this view of the case^ therefore, we deem it proper to reverse the decision,, and direct the verdict to be set aside and a
 
 venire de novo
 
 to try the issue before made up, with liberty to the plaintiff to have the other issue, before asked by him, also tried, and such others as the Superi- or Court may further allow.
 

 Per Curiam, New trial awarded.